IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN SHEPHERD, as administratrix of the Estate of CHRISTOPHER SHEPHERD,<br><br>Plaintiff,<br><br>v.<br><br>DOE POLICE OFFICERS 1-4,<br><br>Defendants. | Civil Action No. 24-CV-1099<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Susan Shepherd, through her attorneys Todd J. Hollis Law and Colianni & Leonard LLC, complains as follows:

### INTRODUCTION

1. This is an action for wrongful death and violations of 42 U.S.C. § 1983 arising out of the senseless killing by police officers of a man experiencing a mental health crisis.

2. On the evening of January 7, 2024, Christopher Shepherd ("Shepherd"), a 48-year-old man suffering from a mental health episode, was killed outside his home in Upper St. Clair, Pennsylvania when police officers from the South Hills Area Council of Government's ("SHACOG") Critical Incident Response Team ("SWAT team") shot him multiple times in the back.

3. At the time he was shot and killed, Shepherd did not pose a threat of serious harm to the SWAT officers or anyone else. Shepherd was armed with only a kitchen knife and was running away from the officers when they shot him. The officers were standing a considerable distance from Shepherd and were not in harm's way.

4. Shepherd had no criminal record and no history of violence. The police had been called to Shepherd's home by his family for help in taking him to the hospital for treatment. The officer's use of deadly force was excessive and unwarranted, and violated Shepherd's Fourth Amendment rights.

## JURISDICTION

5. This Court has jurisdiction under 28 U.S.C. §1331 and §1343, as plaintiff's claims arise under the Constitution and laws of the United States.

6. This Court has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. §1367(a).

7. Venue is proper in the Western District of Pennsylvania under 28 U.S.C. §1391(b)(2) because the events giving rise to plaintiff's claims occurred in this district.

## THE PARTIES

8. Plaintiff Susan Shepherd is the mother of Christopher Shepherd. She is suing in her capacity as the administratrix of the estate of Shepherd.

9. Defendants Doe Police Officers 1-4 are individual police officers who were members of SHACOG's SWAT team that were present at the Shepherd residence on January 7, 2024. SHACOG is an organization comprised of boroughs and townships in the South Hills area of Pittsburgh. Two of the Doe Police Officers were employed by Bethel Park borough, one by Baldwin borough, and one by Brentwood borough.

10. At all relevant times, Doe Police Officers 1-4 were acting under color of law. They are being sued in their individual capacities.

11. Plaintiff does not know the identities of Doe Police Officers 1-4 despite diligent efforts to obtain their names. Plaintiff submitted right to know requests to Bethel Park and Baldwin

boroughs asking for records concerning the shooting, including police reports and documents sufficient to identify the officers who fired the shots. Plaintiff also submitted right to know requests to the Allegheny County Police and to the Allegheny County district attorney's office, both of which investigated the shooting. All of plaintiff's right to know requests were denied.

## GENERAL ALLEGATIONS

12. Shepherd resided with his mother, Susan Shepherd, in Upper St. Clair, Pennsylvania.

13. Shepherd suffered from a mental health disorder throughout his adult life. He took medications to treat his disorder and saw a psychiatrist.

14. In early January 2024, Shepherd began having delusional symptoms. Concerned for his safety, his mother filed a petition to hospitalize him under Section 302 of Pennsylvania's Mental Health Procedures Act. Section 302 allows for the hospitalization of persons undergoing a mental health episode when they become a danger to themselves or others.

15. At approximately 3:30 p.m. on January 7, the Upper St. Clair police went to the Shepherd residence to serve his mother's 302 petition and take Shepherd to the hospital. Shepherd was alone in the house. His mother was waiting in a police car. Before the officers approached the house, she confirmed that there were no firearms or other persons in the house.

16. The officers knocked on the front door and announced that they were there to serve a 302 petition. Shepherd did not believe that the officers were actually the police, and fearing for his safety, refused to answer the door. When the officers continued to knock, Shepherd pushed a kitchen knife through a plywood board covering a broken window near the front door. Shepherd's use of the knife was a symptom of his mental health condition - he thought the officers were there

to harm him and he used the knife defensively to ward off a perceived threat rather than to assault the officers.

17. After seeing the knife, the officers called the SWAT team.

18. The SWAT team, including DOE Police Officers 1-4, arrived at the Shepherd home at 5:00 p.m. When they arrived, the SWAT team was informed that Shepherd was suffering from a mental health episode, was alone in the house, did not have a firearm, and was armed only with a kitchen knife.

19. The SWAT team established a perimeter around the house and evacuated several neighboring homes. A SWAT negotiator then tried to talk to Shepherd, but Shepherd could not understand the negotiator because of his delusional symptoms.

20. At approximately 8:30 p.m., the SWAT commander decided to force Shepherd from his home with tear gas, even though Shepherd's continued presence in his own home was not posing an immediate threat of harm to the officers or the public.

21. SWAT officers shot baton rounds through the living room windows of the house and then fired tear gas rounds through the shattered windows.

22. Seconds after the tear gas was deployed, Shepherd ran out of the house through the garage door.

23. As Shepherd came out of the garage, the SWAT officers shouted "put your hands up over your head" and "put the knife down." Disoriented and frightened, Shepherd ran to his left away from the officers, who were positioned at the end of the driveway and were a considerable distance from the garage door.

24. As Shepherd ran toward the side of his home and away from the officers, Doe Police Officers 1-4 collectively fired 14 shots. An independent autopsy revealed that eight of those shots hit Shepherd in the back and killed him.

25. The Doe Police Officers' use of deadly force was excessive and objectively unreasonable. Shepherd was running away from the officers and did not pose an immediate threat of serious harm to the officers or anyone else. The SWAT team had evacuated bystanders, so Shepherd did not pose any threat to them. Nor was there a risk of Shepherd escaping. That is because the SWAT team had established a closed perimeter when they arrived at the scene hours before.

## COUNT I
### VIOLATIONS OF 42 U.S.C. § 1983: ILLEGAL SEIZURE AND USE OF EXCESSIVE FORCE IN VIOLATION OF SHEPHERD'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION
**(Against all defendants)**

26. Doe Police Officers 1-4 collectively fired 14 shots at Shepherd, eight of which hit him in the back.

27. Doe Police Officers 1-4's use of deadly force was excessive and objectively unreasonable in violation of Shepherd's Fourth Amendment rights.

28. When Doe Police Officers 1-4 shot Shepherd, he posed no immediate threat of serious harm to the officers or anyone else.

29. Doe Police Officers 1-4's acts and omissions were malicious and recklessly indifferent to the constitutional rights of Shepherd, entitling plaintiff to recover punitive damages in an amount sufficient to punish and to protect others from similar conduct.

30. Plaintiff is entitled to reasonable attorney fees, punitive damages, expert fees and costs associated with this litigation under 42 U.S.C. § 1988.

## COUNT II
## 42 Pa.C.S.A. § 8301-8302- WRONGFUL DEATH and SURVIVAL
**(Against all defendants)**

31. Shepherd died on January 7, 2024.

32. The direct and proximate cause of his death was the excessive force by Doe Police Officers 1-4. The use of excessive force constitutes a battery under Pennsylvania law. Doe Police Officers 1-4 intentionally caused harmful and offensive bodily contact with Shepherd. The battery was not privileged because the use of force was unreasonable and excessive.

33. As a wrongful death beneficiary, Susan Shepherd suffered damages including loss of consortium, loss of reasonable funeral expenses, and loss of financial support. In her capacity as administratrix of Shepherd's estate, she is entitled to recover damages for Shepherd's pain and suffering between the time of injury and the time of death and his lost earning capacity.

## COUNT III
## BATTERY UNDER PENNSYLVANIA LAW
**(Against all defendants)**

34. Doe Police Officers 1-4, acting within the scope of their employment, knowingly and intentionally battered Shepherd as described above.

35. Doe Police Officers 1-4's actions were not justified and constituted the unreasonable and unnecessary use of force.

36. Doe Police Officers 1-4's actions directly and proximately caused Shepherd to be injured and suffer damages.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor against Doe Police Officers 1-4, award her compensatory damages in an amount to be proven at trial, award her punitive damages (against the individual officers only), attorneys' fees, costs of suit, expert fees, and any other and further relief the Court deems just and proper.

Respectfully submitted,

**COLIANNI & LEONARD LLC**
Attorneys for Plaintiff Susan Shepherd

DATED:  August 1, 2024

/s/Vincent Colianni II
Vincent Colianni II Esq., PA I.D. # 324050
925 Park Plaza
Wexford, PA 15090
Telephone: (412) 680-7877/(340) 719-1766
Facsimile: (340) 719-1770
vinny@colianni.com

**TODD J. HOLLIS LAW**
Attorneys for Plaintiff Susan Shepherd

/s/Todd J. Hollis
Todd J. Hollis, Esq., PA I.D. #72510
202 Penn Plaza
Turtle Creek, PA 15145
Telephone: (412) 515-4483
Facsimile: (412) 646.5748
toddjhollis@gmail.com